# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARIO KING,<br><br>        Petitioner,<br>v.<br><br>JUDY SMITH,<br><br>        Respondent. | Case No. 16-CV-732-JPS<br><br>**ORDER** |

Mario King ("King") was found guilty of conspiracy to possess cocaine with intent to deliver at a jury trial in July 2013. (Docket #11-4 at 7-8). On October 16, 2013, King was sentenced to a term of fifteen years imprisonment. *Id.* at 6. King filed an amended petition for writ of *habeas corpus* on August 9, 2016. (Docket #6). The respondent opposed the petition on January 13, 2017, and King submitted his reply on February 10, 2017. (Docket #14 and #15). For the reasons explained below, the petition will be denied.

1. **BACKGROUND**

The Court of Appeals opinion succinctly states the background for this matter, so this Court will quote its opinion at length:

> The State of Wisconsin charged King, an Illinois resident, with conspiracy to possess cocaine with intent to deliver. According to the complaint, King sold a large quantity of cocaine to a Wisconsin resident who travelled to Chicago to obtain the cocaine. King moved to dismiss for lack of personal jurisdiction. King argued that his only involvement in the alleged conspiracy occurred in Illinois. The court denied the motion, and King was bound over for trial.
> 
> At trial, the State presented evidence of the following. In the summer of 2009, police in Green Lake County, Wisconsin, received a tip that Emil Craig Burmeister [("Craig")] was

dealing cocaine in the area. As part of the investigation into Burmeister's activities, police received information that King was involved. King and Burmeister are friends, and have known each other since 2006. Burmeister travelled to Chicago approximately every two weeks and obtained cocaine.

On August 9, 2009, Burmeister and his wife [("Etheena") (collectively, the "Burmeisters")] drove from Green Lake County to Chicago to meet with King. In Chicago, King facilitated the sale of a large volume of cocaine to Burmeister. Burmeister was arrested after he returned to Green Lake County, and police recovered 615 grams of cocaine from Burmeister's car. There was testimony that such quantity is inconsistent with personal use. Additionally, Burmeister had in his car a calculator, four cell phones, and an envelope with abbreviations and numerical amounts, indicating orders for cocaine and amounts that had been paid. Burmeister admitted that he intended to distribute the cocaine to others, and pled guilty to drug charges.

At the close of the State's evidence, King moved for a directed verdict. He argued that there was no evidence of an agreement between King and Burmeister as to Burmeister's intent to deliver the cocaine to other parties. The circuit court denied the motion. The jury found King guilty and the circuit court entered a judgment of conviction. King appeals.

*State v. King*, 862 N.W.2d 903 (Table), 2015 WL 1235360 at *1 (Wis. Ct. App. 2015). For reasons explained more fully below, the Court of Appeals affirmed King's conviction on March 19, 2015. *Id.* at *4. On August 5, 2015, the Wisconsin Supreme Court declined to review that decision. (Docket #6-1 at 32).

2. **STANDARD OF REVIEW**

"Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of *habeas corpus* only if the state court's decision with respect to that claim was: (1) "contrary to…clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)).

**3.    ANALYSIS**

King's petition attempts to state three grounds for relief, but two of those grounds present the same legal basis and so will be treated together. The first is that the Wisconsin state court lacked jurisdiction to adjudicate his crime because the drug transaction occurred in Illinois. (Docket #1 at 3). The second (grounds two and three from the petition) asserts that Wisconsin did not present evidence sufficient to support his conviction. *Id.* at 3-4. The Court addresses the claims in reverse order.

**3.1    Sufficiency of the Evidence**

King claims that the state did not present sufficient evidence to support his conviction for conspiracy to possess cocaine with intent to distribute it. (Docket #1 at 3-4 and #15 at 4-12). As described by the Seventh Circuit in *Jones*,

> [t]he standard of review [for such claims] is a rigorous one: evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 . . . (1979). Because we consider this claim on collateral review rather than direct appeal, the Antiterrorism and Effective Death Penalty Act imposes an additional layer of defense onto this inquiry: we may grant relief on this claim only if the Illinois Appellate Court applied the Jackson standard unreasonably to the facts of Jones's case. § 2254(d)(1); *see, e.g.*, *Trejo v. Hulick*, 380 F.3d 1031, 1032 (7th Cir. 2004).

*Jones v. Butler*, 778 F.3d 575, 581-82 (7th Cir. 2015). At the state court appellate stage, King "face[d] an extremely difficult burden" to meet the *Jackson* standard. *United States v. Hosseini*, 679 F.3d 544, 557 (7th Cir. 2012). Now, in seeking federal habeas relief, King must labor under two layers of judicial deference. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). Not only is this Court required to maintain *Jackson*'s deference to the jury's verdict, but as noted by *Jones*, it cannot overturn the state court's sufficiency determination simply because it might disagree; King may only succeed here if the state court's decision was objectively unreasonable. *See id.*

King fails to pass this high bar. In the Court of Appeals, King argued that the State did not establish the proper elements of the offense of conviction pursuant to that court's *Cavallari* opinion. *King*, 2015 WL 1235360 at *1-3. The Court of Appeals distinguished *Cavallari*, finding that it dealt with a different species of drug conspiracy than what King was charged with. *Id.* at *3. Even if King challenged that determination here (his petition does not seem to mention it), errors in the application of state law are not cognizable grounds for *habeas* relief. *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015).

The remainder of his arguments are of the standard "sufficiency" variety. King contends that no law enforcement officers actually observed any drug sale transaction, that the Burmeisters memories of the incident were questionable, that he did not give them any drugs, and that he lacked any knowledge that they wanted to buy drugs for resale. (Docket #1 at 3-4). Though otherwise unreviewable, a portion of the Court of Appeals' discussion of *Cavallari* is helpful to understand what the State actually needed to prove. It held:

> In *Cavallari*, we addressed the evidence necessary to establish an agreement between the seller and buyer that the buyer *would deliver* the purchased drugs to third parties. Here, we must determine the evidence necessary to establish an agreement between the seller and buyer that the buyer would *possess with intent to deliver* the purchased drugs to third parties. While *Cavallari* holds that more than a single sale of a large quantity of a controlled substance is necessary to show a conspiracy to deliver, the same does not hold true for a conspiracy to possess with intent to deliver. While a delivery conviction requires evidence of the act of delivering the drugs, a conviction for possession with intent requires only the act of possessing with the requisite intent, and intent may be inferred from the quantity of the drugs possessed. Wis. Stat. §§ 961.41(1) and (1m). Thus, the sale of a large quantity of drugs supports the inference that the seller intended that the buyer possess the drugs with intent to deliver, and that the seller entered into an agreement with the buyer for the buyer to commit that crime.

*King*, 2015 WL 1235360 at *3 (emphasis in original). Applying that standard, the Court of Appeals found that the evidence supported a finding that King sold a large amount of cocaine to the Burmeisters. *Id.* This, in turn, established the inference that King intended for Burmeister to possess the cocaine for resale. *Id.* The evidence supported Burmeister's crime of possession with

intent to deliver and King's conspiracy therein. *Id.*

The Court of Appeals' fact determinations cited above were based upon, *inter alia*, the following testimony. The Burmeisters testified that they traveled to Chicago on August 9, 2009. Craig's memory was quite hazy at trial, but he remembered meeting King that day and obtaining cocaine, though he did not confirm that it was *from* King. (Docket #11-6 at 197-200). Etheena's memory was much clearer; she testified that she gave the money to King and he gave her the cocaine. (Docket #11-7 at 59-60) ("Q: What happened when you met up with Mario in Chicago? Did you go anywhere else? A: I think we drove to a gas station, and I counted the money and gave it to Mario, and he counted it. . . . Q: And what happened when that vehicle arrived? A: Mario got the coke, gave it to me, and we left."). A police officer who interviewed Craig on June 15, 2010, testified that during that interview, Craig admitted that he met with King on the day in question and exchanged money with him for cocaine. *Id.* at 36-37.

Under the deferential review required by the above-cited opinions, this Court cannot say that the Court of Appeals unreasonably applied *Jackson* deference to the jury's verdict. A rational trier of fact, hearing this testimony, could find that King delivered a large amount of cocaine to the Burmeisters on August 9, 2009, with the intention that they would then resell the cocaine. His contentions about the interruption in surveillance, Etheena's possible drug use affecting her memory, and his lack of knowledge of the Burmeister's intentions were all subject to the jury's credibility determinations, which this Court cannot disturb. *Harmon v. McVicar*, 95 F.3d 620, 623 (7th Cir. 1996) (" It is the fact-finder, not the appellate court that determines the credibility of

witnesses' testimony. . . . Given that the jury was free to make its own credibility judgments of the witnesses, the evidence was sufficient to support the conviction." (citation omitted)). In any event, what the jury *actually* concluded does not matter; they could have found King guilty of the charge, and so his sufficiency claim must fail.

### 3.2 Jurisdiction

King argues that his only participation in the conspiracy occurred in Illinois, so the Wisconsin court lacked jurisdiction to hear the case and enter judgment thereon. (Docket #1 at 3 and #15 at 1-3). This is not reviewable in a *habeas* petition. As with the interpretation of the elements of King's conspiracy charge, it was the Court of Appeals' exclusive province to interpret Wisconsin's relevant jurisdictional statute. *United States ex. rel. Holliday v. Sheriff of Du Page Cnty., Ill.*, 152 F.Supp.2d 1004, 1012-13 (N.D. Ill. 2001); *Kierstead v. Warden, Northern N.H. Corr. Facility*, No. Civ. 05-CV-432, 2006 WL 212135 at *4 (D. N.H. Jan. 27, 2006); *Yarbrough v. Eagen*, No. 14-CV-10460, 2015 WL 349020 at *5 (E.D. Mich. Jan. 25, 2015). The Court of Appeals did so and found jurisdiction was proper, and this Court has no power to review that determination. *King*, 2015 WL 1235360 at *3. King's jurisdiction claim must also be denied.

### 4. CONCLUSION

This Court finds that King's claims are meritless and it is therefore compelled to deny his petition. (Docket #6). Still, under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2),

King must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Further, when the Court has denied relief on procedural grounds, the petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. As a consequence, the Court is further compelled to deny a certificate of appealability as to King's petition.

Finally, the Court closes with some information about the actions that King may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry

of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that the petitioner Mario King's petition for a writ of *habeas corpus* (Docket #6) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner Mario King's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge